UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———————————

ESSENCE WILLIAMS,

        Plaintiff,

v.                                       Case No. 1:11-CV-26

DELAMAR CAR CO.,                 HON. GORDON J. QUIST

        Defendant.
_____/

## OPINION

### BACKGROUND

Plaintiff filed her Complaint in this case on January 7, 2011, alleging that Defendant violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, and the regulations thereunder, as well as the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, *et seq.*, in connection with the sale of a motor vehicle to Plaintiff pursuant to a motor vehicle installment contract. Plaintiff also alleged that Defendant converted her vehicle, breached its contract with Plaintiff, and violated Michigan's version of the Uniform Commercial Code, M.C.L. § 440.9101, et seq. Plaintiff served a summons and a copy of the Complaint on Defendant on January 11, 2011. Defendant's Answer was due on February 1, 2011. Defendant failed to answer within the prescribed time, and on March 16, 2011, Plaintiff filed an Application for Entry of Default.[1] The Clerk entered the default on March 17, 2011. Plaintiff has now moved for entry of default judgment.

Defendant is a corporation and, therefore, is not a minor, an incompetent person, or a current member of the military service. Fed. R. Civ. P. 55(b); 50 U.S.C. App. § 521. *See Bd. of Trs. of the Sign Pictorial & Display v. Preferred Exhibitor Serv., No.* C-04-2826 MJJ, 2005 WL 43958, at *1 (N.D. Cal. Jan. 10, 2005) ("As a corporation, Defendant is not a unrepresented minor, an

---

[1] On February 3, 2011, the Court entered an Order rejecting Defendant's proposed answer for the reason that the filer, Steven Bailey, Defendant's General Manager, was neither a party nor an attorney in this case. Following that rejection Defendant made no attempt to appear through counsel.

incompetent person, or a person in military service."). Defendant's status thus does not preclude entry of a default judgment.

It is well-established that once a default is entered against a defendant, that party is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110-11 (6th Cir. 1995); *Cotton v. Slone*, 4 F.3d 176, 181 (2d Cir. 1993). Therefore, by its default, Defendant has admitted all facts to establish liability. Plaintiff is entitled to a default judgment pursuant to Fed. R. Civ. P. 55(b)(2). However, Plaintiff must still establish her damages. *Antoine*, 66 F.3d at 110. A hearing is unnecessary if sufficient evidence is submitted to support the request for damages. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997).

## FACTS

In support of her motion for default, Plaintiff has submitted a copy of the retail installment contract and an affidavit. (Pl.'s Br. Supp. Mot. for Default Judgment Exs. 1 and 2.) The retail installment contract, signed on February 4, 2010, shows that the purchase price for the vehicle was $8,000 and that Plaintiff was charged $1,380 for an extended warranty from Wynns. Plaintiff was not given a copy of the retail instalment contract disclosing the finance charge at or before the time of the sale. (Williams Aff. ¶ 3.) Plaintiff did not take delivery at the time she signed the contract because Defendant was going to install a GPS locator on the car. Plaintiff was told that she could have a copy of the contract when she returned to pick up the car. (*Id.* ¶ 3.) On February 9, 2010, Plaintiff contacted Defendant to inquire about the status of the transaction and was told that the price she was charged included a bank fee of $570 based on Plaintiff's credit risk. (*Id.* ¶ 4.)

Approximately two weeks after obtaining a copy of the contract, Plaintiff noticed that it included a charge for an extended warranty that she did not want. Plaintiff contacted Wynns, the

2

warranty company, informing them that she was cancelling the warranty. After several conversations, Wynns told Plaintiff that it had not received any warranty paperwork from the dealer. Wynns assured Plaintiff that if there was a warranty, it would be cancelled and a refund would be credited against the installment contract. (*Id.* ¶ 4.) It appears that Plaintiff never received a credit for the cancelled warranty.

Plaintiff was told that the installment contract was assigned to Credit Acceptance Corporation ("CAC"), and the retail installment contract specifically states that it was being assigned to CAC. As directed, Plaintiff made her first payment to CAC. (*Id.* ¶ 6.) When Plaintiff went to make her second payment, however, the CAC representative told her that CAC would no longer accept payments because the dealer had cancelled the contract. The CAC representative told Plaintiff that it was the dealer's decision. (*Id.*) When Plaintiff spoke to Defendant, she was told that the financing had not been approved because she had not supplied her Bridge Card. (*Id.* ¶ 7.) Plaintiff explained that she had provided all of the documentation, but Defendant told Plaintiff that she had to return the car or it would be repossessed. (*Id.*) Plaintiff did not return the car, and Defendant repossessed it on or about September 9, 2010. (*Id.* ¶ 8.)

## DISCUSSION

### *TILA Claim*

The TILA was enacted to "assure a meaningful disclosure of credit terms" to promote the "informed use of credit" and "to protect the consumer against inaccurate and unfair credit billing . . . practices." 15 U.S.C. § 1601(a). "To this end, the TILA requires creditors to disclose clearly and accurately all the material terms of a credit transaction." *Palmer v. Champion Mortg.*, 465 F.3d 24, 27 (1st Cir. 2006) (citing *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412, 118 S. Ct. 1408, 1410 (1998)). In a credit transaction, the creditor must disclose, among other things, the "amount

financed," which is "the amount of credit of which the consumer has actual use," 15 U.S.C. §1638(a)(2)(A), and the finance charge. 15 U.S.C. § 1638(a)(3).

In her brief in support of the instant motion, Plaintiff contends that Defendant committed two TILA violations. First, she contends that, although the installment contract stated the amount financed, the disclosure failed to state that the extension of credit was conditional. In other words, Plaintiff contends that Defendant failed to disclose that its extension of credit was subject to Defendant's unilateral decision to cancel the credit in the event Defendant was unable to assign the contract to CAC on favorable terms or, perhaps, when Plaintiff canceled the warranty, thereby reducing Defendant's profit margin. Citing *Patton v. Jeff Wyler Eastgate, Inc.*, 608 F Supp. 2d 907 (S.D. Ohio 2007), Plaintiff contends that Defendants' disclosures, stating that Defendant was unconditionally extending credit to Plaintiff, were illusory. *See id.* at 914. Alternatively, Plaintiff argues that the amounts disclosed in the installment contract were only estimates, the fact of which Defendant was required to disclose pursuant to Regulation Z. *See* 12 C.F.R. § 226.17(c) ("If any information necessary for an accurate disclosure is unknown to the creditor, the creditor shall make the disclosure based on the best information reasonably available at the time the disclosure is provided to the consumer, and shall state clearly that the disclosure is an estimate.")

Plaintiff asserts that Defendant committed a second TILA violation by failing to disclose a hidden finance charge – the fee based on Plaintiff's credit risk – that would not have been charged in a comparable cash sale. Such fees are hidden finance charges, the nondisclosure of which violates the TILA. *See Kilbourn v. Candy Ford-Mercury, Inc.*, 209 F.R.D. 121, 128-29 (W.D. Mich. 2002).

Although the Court has some concerns about the validity of the first alleged TILA violation,[2]

---

[2]*Patton*, which Plaintiff cites for her argument that Defendant's disclosure was rendered illusory, involved the use of a Spot Delivery agreement. *See* 608 F. Supp. 2d at 909, 913-15. Although Plaintiff alleges that this case involves an illegal "spot delivery" or "yo yo sale," (Compl. ¶ 1), there is no indication that Plaintiff signed a Spot Delivery agreement. In other words, it appears from the allegations that the sale was final because there was no indication that it was contingent upon financing. Although the *Patton* court held that the use of the separate Spot Delivery agreement

4

Plaintiff has adequately established a TILA violation based upon her hidden finance charge claim. The TILA permits a court to award statutory damages, in the case of an individual, of twice the amount of any finance charge up to $1,000. 15 U.S.C. § 1640(a)(2)(A)(i). The Court concludes that a statutory award of $1,000 is appropriate.

## *ECOA*

The ECOA requires that "[w]ithin thirty days . . . after receipt of a completed application for credit, a creditor shall notify the applicant of its action on the application." 15 U.S.C. § 1691(d)(1). A creditor who takes an adverse action against a consumer must furnish a notice of the specific reasons why an adverse action was taken against the consumer. 15 U.S.C. § 1691(d)(2); *see Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 975 97th Cir. 2004). An adverse action includes, among other things, a denial or revocation of credit. 15 U.S.C. § 1691(d)(6). A creditor "who fails to comply with any requirement imposed under . . . [the ECOA] shall be liable to the aggrieved applicant for punitive damages in an amount not greater than $10,000 . . . ." 15 U.S.C. § 1691e(b).

Plaintiff contends that Defendant violated the ECOA when it decided that it would not extend credit to Plaintiff and failed to provide a notice stating the reasons for the adverse action. Plaintiff requests an award of punitive damages for the violation in the amount of $2,000. Having concluded that Plaintiff established a violation of the ECOA, the Court finds that an award of $2,000 is reasonable.

---

violated the TILA, other courts have held that spot delivery transactions are valid. *See Anderson v. Frederick Ford Mercury, Inc.*, 694 F. Supp. 2d 324, 329 (D. Del. 2010); *Chastain v. N.S.S. Acquisition Corp.*, No. 08-81260-CIV, 2009 WL 1971621, at *4 (S.D. Fla. July 8, 2009). Moreover, the Ninth Circuit has held that "a creditor's undisclosed intent to act inconsistent with its disclosures is irrelevant in determining the sufficiency of those disclosures under sections 226.5, 226.6, and 226.9 of Regulation Z." *Hauk v. JP Morgan Chase Bank USA*, 552 F.3d 1114, 1122 (9th Cir. 2009). In addition, the Court tends to disagree with Plaintiff that Defendant's disclosures were estimates. *See Janikowski v. Lynch Ford, Inc.*, 210 F.3d 765, 768 (7th cir. 2000) ("If the financing condition had been satisfied, Janikowski would be able and obligated to purchase the car at 5.9%. However, when Janikowski did not receive approval of financing at 5.9%, she could have canceled the contract and refused to purchase the Escort. Either way, the disclosed rate was a set rate, not an estimate.").

*Conversion*

Plaintiff also asserts a claim for conversion and seeks treble damages pursuant to M.C.L. § 600.2919a, which provides in pertinent part:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

M.C.L. § 600.2919a(1).

Plaintiff contends that she is entitled to treble damages for the value of the vehicle because Defendant repossessed it when Plaintiff was not in default, failed to return it, and later sold it to another buyer. Plaintiff's allegations establish that value of the vehicle was $8,000. Therefore, Plaintiff is entitled to treble damages in the amount of $24,000 on her conversion claim.

*Uniform Commercial Code*

Plaintiff contends that she is entitled to damages pursuant to § 9625(b) of Michigan's version of the Uniform Commercial Code ("UCC"), which provides:

> If the collateral is consumer goods, a person that was a debtor or a secondary obligor at the time a secured party failed to comply with this part may recover for that failure in any event an amount not less than the credit service charge plus 10% of the principal amount of the obligation or the time-price differential plus 10% of the cash price.

M.C.L.A. § 440.9625. Plaintiff contends that Defendant violated Article 9 of the UCC by failing to notify Plaintiff of the intended disposition of the vehicle and to provide a description of Plaintiff's deficiency liability, contrary to both §§ 9613(a)(iii) and 9614(a)(ii) of the UCC. *See* M.C.L.A. §§

440.9613(a)(iii), 440.9614(a)(ii). Based upon these violations, Plaintiff is entitled to $2,778.20 – the amount of the time price differential – plus 10% of the cash price – $800 – for a total of $3,578.20.

### *Fees and Costs*

Finally, Plaintiff seeks to recover her attorney fees and costs under the TILA, the ECOA, and the Michigan conversion statute. *See* 15 U.S.C. §§ 1640(a)(3), 1691e(d); M.C.L.A. § 600.2919a(1). Plaintiff's counsel has submitted an affidavit showing that he spent a total of 14.40 hours on this litigation at an hourly rate of $250. Employing the lodestar method, the Court concludes that the requested hourly rate is reasonable and commensurate with the hourly rate charged by other attorneys in the West Michigan area for similar types of work. The Court also concludes that the 14.40 hours of work Plaintiff's counsel performed in this case was reasonable. Thus, Plaintiff is entitled to an award of attorney fees in the amount of $3,600. In addition, Plaintiff is entitled to costs of $377 for the filing fee and service fee.

### CONCLUSION

In accordance with the foregoing, Plaintiff is entitled to a default judgment against Defendant in the amount of $34,555.20.[3]

A separate judgment will issue.


Dated: May 12, 2011                             /s/ Gordon J. Quist
                                              GORDON J. QUIST
                                         UNITED STATES DISTRICT JUDGE

---

[3] In her motion and in the conclusion to her brief, Plaintiff requested an award of only $30,677, which omits the $3,578.20 pursuant to M.C.L.A. § 440.9625(b) and incorrectly calculates the award of attorney fees and costs as $3,677. The Court assumes that this omission and discrepancy was an unintentional clerical mistake.